OPINION
Although this appeal was originally placed on the accelerated docket, this court elects to render a full opinion in accordance with Loc.R. 12(5).
Appellant, Nancy Franks, as Administrator of the estate of James Franks, a minor, deceased, appeals from a judgment of the Allen County Court of Common Pleas granting the summary judgment motion of Appellee, Linda K. Venturella. For the reasons that follow, we reverse the decision of the trial court.
Appellant brought this survivorship/wrongful death action alleging negligence against Appellee based upon an automobile/bicycle accident involving Appellee and Appellant's, now deceased, twelve year old son, James Franks. On the early evening of July 24, 1997, Appellee was driving her car eastbound on Willow Street in a residential neighborhood in Lima, approaching the intersection of Willow Street and Wren Street. Wren Street abuts Willow Street from the south, forming a `T' intersection. There is no stop sign or stoplight for either the eastbound or westbound traffic on Willow Street; however, there is a stop sign for the northbound traffic on Wren Street. The maximum speed limit on each street is twenty-five miles per hour.
Immediately prior to reaching the intersection, Appellee diverted her attention from the road in front of her as she glanced to her left. When Appellee turned to face the road again she noticed that James had ridden his bicycle from Wren Street directly into the path of her car. Appellee immediately applied her brakes but has unable to stop, thus, colliding with James and throwing him from his bicycle. James died as a result of injuries sustained in the accident.
Thereafter, on October 29, 1999, Appellee moved for summary judgment on the issue of liability, which was overruled by the trial court on December 7, 1999. On December 14, 1999, Appellee moved the trial court to reconsider its December 7, 1999 decision. After reconsideration, on December 28, 1999, the trial court vacated its prior judgment of December 7, 1999 and granted Appellee's summary judgment motion. Subsequently, Appellant moved the trial court to reconsider its December 28, 1999 decision, which was denied on January 20, 2000.
Appellant now appeals the December 28, 1999 judgment entry, assigning two errors for our review, which will be addressed in reverse order.
Assignment of Error No. 2
Summary judgment was inappropriate because there exists an issue of fact with regard to whether Defendant was negligent.
It is well settled that when reviewing a summary judgment, an appellate court reviews the judgment independently and without any deference to previous determination by the trial court.Midwest Specialties, Inc. v. Firestone Tire Rubber Co.
(1988), 42 Ohio App.3d 6. The standard of review in this court is de novo. AAAA Enterprises, Inc. v. River Place CommunityUrban Redevelopment Corp. (1990), 50 Ohio St.3d 157. It is axiomatic that a court is without authority to grant summary judgment unless it can be demonstrated that:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United (1977), 50 Ohio St.2d 317, 327; Civ.R. 56(C).
Negligence liability "is predicated upon injury caused by thefailure to discharge a duty owed to the injured party." McDonaldv. Lanius (Oct. 28, 1993), Marion App. No. 9-93-23, unreported,quoting Deeds v. American Security (1987), 39 Ohio App.3d 31, 33.In order to sustain an action based upon negligence, "one mustshow in addition to the existence of a duty, a breach of that dutyand injury resulting proximately therefrom." Mussivand v. David(1989), 45 Ohio St.3d 314, 318. In a negligence action, theexistence of a duty is a question of law for the court to decide.Id.
In its December 28, 1999 judgment entry, the trial court ruled that even if Appellee was negligent in some respect, reasonable minds could only conclude that the negligence of James Franks was greater than fifty percent of the total negligence, thus, barring Appellant as a matter of law. The court also held that there is no probative evidence to show that Appellee violated any duty, nor is there any evidence to refute the fact that James Franks failed to yield the right of way to vehicles traveling on Willow Street.
In support, the trial court noted the undisputed fact that Appellee had the right of way pursuant to R.C. 4511.01(UU) while traveling eastbound on Willow Street. R.C. 4511.01(UU) states in pertinent part:
 "Right-of-way" means either of the following, as the context requires:
 (1) The right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path.
* * *
 Pursuant to this statute, the right to proceed uninterruptedly is not an absolute right; it can be lost if an individual is proceeding unlawfully. Morris v. Bloomgren (1933), 127 Ohio St. 147; Deming v. Osinski (1970), 24 Ohio St.2d 179; Almanza v. Kohlhorst (1992), 85 Ohio App.3d 135.
Appellant argues that there is an issue of fact regarding whether Appellee lost her preferred status because she was proceeding unlawfully. In support, Appellant claims that Appellee's speed, and her lack of vigilance immediately prior to the accident are each causal factors to be considered by a jury. Both issues are discussed separately below.
 Speed
In an attempt to argue that Appellee was speeding in thetwenty-five m.p.h. zone on Willow, Appellant first urges thiscourt to examine the accident reconstruction report prepared byDeputy Stechschulte of the Allen County Sheriff's Department.Deputy Stechschulte concludes in his report that Appellee wastraveling at a rate of approximately thirty-two m.p.h. prior tothe collision. The trial court declined to admit the reportbecause it was not properly authenticated. We agree.
In General Motors Acceptance Corp. v. Hollanshead (1995),105 Ohio App.3d 17, 20, this court stated:
 Civ.R. 56 provides for the introduction of certain evidentiary material in support of a motion for summary judgment. The rule specifies that the only acceptable means of introducing documentary evidence for consideration on the motion is to incorporate it by reference in a properly framed affidavit.
* * *
 Furthermore, the incorporated document must be properly authenticated to be of the evidentiary nature required by Civ.R. 56(C).
 The record demonstrates that Appellant did not properly authenticate the accident reconstruction report pursuant to Hollanshead when she filed her summary judgment motion. Because Appellant did not do so, the report is inadmissible.
Next, Appellant argues for the admissibility of the lay testimony of Matt Lamb to establish that Appellee was speeding. The trial court, however, precluded Lamb's testimony because he did not personally observe Appellee's car prior to the collision. Again, we agree with the trial court.
To constitute admissible lay opinion testimony the statements regarding speed must meet the requirements set forth in Evid.R. 701, which states:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
Regarding lay witness testimony, the Supreme Court of Ohio stated:
 It rests within the sound discretion of the court whether the witness may express an opinion or not. When the opinion is based upon personal observation of a subject upon which any ordinary intelligent person may have expert knowledge and experience, qualification is not necessarily a prerequisite to stating the results of that observation and giving an opinion thereon.
State v. Auerbach (1923), 108 Ohio St. 96, 98.
In his deposition, Matt Lamb testified as follows:
 Q: Okay, and that being the case you didn't see the collision happen, right?
 A: Once I looked back, I just seen, I heard the squealing of the tires. I seen the car jack down. The front end was towards the thing, and he was up on the windshield and he just got thrown.
* * *
 Q: * * * [W]ould you agree that you don't have an opinion based on your personal knowledge or perception regarding how fast Linda was traveling prior to the impact?
A: I wouldn't be able to tell you, no.
Q: So you would agree with that?
A: I would agree.
The record clearly establishes that Matt Lamb did not perceive Appellee's car prior to the collision and did not have personal knowledge of her speed. Therefore, the trial court's preclusion of Lamb's testimony was, likewise, proper.
Because of the inadmissibility of the accident reconstruction report, and Matt Lamb's testimony, there is no evidence before the court from which might be drawn the inference that Appellee was proceeding unlawfully.
 Vigilance
Appellant argues that Appellee should be held to a heightened duty to exercise ordinary care for the safety of children in her neighborhood. In support, Appellant notes that Appellee was familiar with the neighborhood and knew that children are reasonably expected to be in the vicinity. Appellant argues that Appellee breached this duty of care by driving inattentively through the neighborhood. Additionally, Appellant argues that there is an issue of fact as to whether Appellee's inattentiveness was a proximate cause of the accident and, if so, what percentage is attributable to her.
In Williams v. Putnam Transfer Storage Co. (Feb. 3, 1994), Cuyahoga App. No. 64659, unreported, the Eight District Court of Appeals decided a similar issue. That case involved a negligence action brought by the appellants to recover injuries sustained by their minor child after being struck by a vehicle while crossing a street. The appellants argued that the driver of the motor vehicle failed to keep a proper lookout for children in the area.
The trial court granted summary judgment in favor of the appellees, because the appellants failed to produce evidence supporting a prima facie case of negligence. On appeal, the court addressed the standard of care issue, stating:
 [C]ase law imposes a higher standard of care on operators of motor vehicles when (1) a child pedestrian is involved; (2) children may reasonably be expected to be in the vicinity; or (3) the driver becomes aware of a perilous situation.
In applying this standard of care, the Eighth District ultimately affirmed the trial court's grant of summary judgment.
In addition to Williams, the Sixth District Court of Appeals applied this heightened standard of care in Rayoum v. Adams (July 24, 1998), Lucas App. No. L-97-1370, unreported. In that case, a three year old was struck and killed by a car while running across a street. Not unlike the facts in the present case, the driver diverted his attention from the road immediately prior to the impact to look at his speedometer. The trial court held that the motorist was negligent for failing to exercise ordinary care under the circumstances. In affirming the decision, the Sixth District stated:
 The degree of care required by a motorist is controlled by and depends on the place, circumstances, surroundings and conditions.* * * In cases where the driver of a motor vehicle knows of the presence of children in, near, or adjacent to the street or highway, or should know that children may reasonably be expected to be in the vicinity, the driver is under a heightened duty to exercise ordinary care for the safety of the child or children. * * *
In support, the Sixth District noted that the street on which the accident occurred was undisputedly located in an area where children could reasonably be expected to be found. The court also took into account the fact that the driver had traveled through this area many times prior to the accident and knew that children could be in the vicinity.
In the case sub judice, the record reflects that when the accident occurred Appellee was living in the same residential neighborhood as Appellant and was familiar with the area. In her deposition, Appellee testified that she had seen children in that neighborhood before. Appellee also testified that she was aware that children would regularly ride their bicycles on the streets through the neighborhood. Therefore, based on the reasoning inWilliams and Rayoum, we find that Appellee had a heightened duty to exercise ordinary care for the safety of the children in the neighborhood.
We would add, however, as a caveat, that the heightened duty of care required varies according to the age and experience of the child to whom the care is owed. Judge Whiteside, of the Court of Appeals of Franklin County, pointed out in a concurring opinion that:
 "The degree of care required to discharge a duty owed to a child of tender years not only is greater than that required to discharge the duty owed to an adult under the same circumstances, but also is necessarily greater than that required to discharge the duty owed to an older child under the same circumstances."
Sargent v. United Transp. Co. (1978), 56 Ohio App.2d 159. Therefore, the duty of care owed by the driver, while heightened, is yet proportional to the child's age and experience and his inability to foresee and avoid perils such as presented herein.
The issue then becomes whether there is a question of factregarding both the breach of due care and proximate causationelements necessary to sustain a cause of action in negligence. Inher deposition, Appellee testified that as she approached theintersection of Wren Street and Willow Street she glanced to herleft momentarily, thus, taking her eyes off the road. She furthertestified that when she redirected her vision to the road in frontof her she saw Jimmy Franks dart in front of her car on hisbicycle. Appellee immediately applied her brakes but was unableto stop her car in time.
In McDonald v. Lanius (Oct. 28, 1993), Marion App. No. 9-93-23, unreported, this court stated:
 If a person goes unexpectedly in front of a moving automobile which is being prudently managed and controlled by the driver, who is unable, by the exercise of ordinary care and prudence, to avoid injury to such person, the driver is not liable.
 In that case, we held that an individual who was exercising ordinary care while driving his car had no reason to expect that a pedestrian would dart into rush hour traffic and run into the side of his car.
While the facts in the case sub judice are not dissimilar from those in Lanius, we cannot say as a matter of law that the appellee is relieved of liability. It is eminently a question of fact in this case whether Appellee breached the heightened duty of care she was required to exercise by failing to prudently manage and control her automobile, and look out for children in the vicinity. There is also a question of fact concerning whether any breach of that duty was a proximate cause of the accident and, if so, to what extent Appellee is liable.
Accordingly, Appellant's assignment of error is well taken with respect to the issue of Appellee's vigilance and is therefore sustained.
Assignment of Error No. 1
Summary judgment was not appropriate in this case since there exists an issue of fact with respect to whether Jimmy Franks was negligent.
Notwithstanding any negligence on the part of Appellee, the trial court held as a matter of law that reasonable minds could only conclude that the negligence attributable to James Frank was greater than fifty percent of the combined total negligence, thus, barring Appellant from recovery. In support, the trial court found that James was obligated to stop his bicycle at the intersection of Wren Street and Willow Street and yield the right of way to vehicles traveling on Willow Street. The court also stated that "Franks was an experienced bicyclist and thoroughly trained with respect to his duties at stop signs."
Appellant argues that the trial court erred in ruling as amatter of law that James' negligence exceeded Appellee'snegligence. Instead, Appellant claims that the amount of James'negligence, if any, is a question of fact for a jury to decide. Insupport, Appellant asserts that the same standards of negligencethat apply to adults do not apply to children.
With respect to a child's capacity for contributory negligence, it is well settled that children under the age of fourteen should not be held to the same standard of care for their own safety as an adult. In Rolling-Mill Co. v. Corrigan (1889), 46 Ohio St. 283,288, the Supreme Court upheld a trial court's charge that a minor under the age of fourteen may be held to that standard of ordinary self care as "boys of that age, of ordinary care and prudence, would use under like circumstances * * * tak[ing] into consideration the age of the plaintiff, and the judgment and knowledge he possessed."
Thereafter, the Rolling-Mill rule was modified for childrenbetween seven and fourteen years of age. The Supreme Court, in asubsequent case, approved the proposition that a child is presumedto possess only such discretion as is common to children and is,therefore, held only to the exercise of such care as is reasonablyexpected from a child of his own age and capacity. The court,however, went further and determined that by analogy to theprinciples of capacity in criminal law, there is a rebuttablepresumption that a child between seven and fourteen years of ageis incapable of being contributorily negligent. The courtprovided also that this presumption could be rebutted by a factualshowing that the child is of sufficient maturity and capacity toavoid danger and make intelligent judgments with regard to theparticular activity in which he had engaged. Lake Erie W.Railroad Co. v. Mackey (1895), 53 Ohio St. 370, 383-384.
The Mackey rule has been followed generally since. See:Cleveland, C., C., St. L. Ry. Co. v. Grambo (1921), 103 Ohio St. 472; Fightmaster v. Mode (1928), 31 Ohio App. 273 (Hamilton App.); Morrin v. Bond (1950), 87 Ohio App. 357 (Lucas App.);Howland v. Sears Roebuck Co. (1971), 438 F.2d 725; (C.A.6 Ohio); Gaffney v. Sexton (Feb. 18, 1993), Montgomery App. No. 13634, unreported; Holman v. Licking County (1993), 107 Ohio App.3d 106
(Licking App.).
"Issues of comparative negligence are for the jury to resolveunless the evidence is so compelling that reasonable minds canreach but one conclusion." Simmers v. Bentley Construction Co.(1992), 64 Ohio St.3d 642, 646, citing Hitchens v. Hahn (1985),17 Ohio St.3d 212.
We must therefore conclude that because James Franks was only twelve years old when the accident occurred, there is a rebuttable presumption that, as a matter of law, he was "incapable" of negligence. This is not to say, however, that he is absolved of liability. Rather, this presumption may be rebutted with facts that establish he was capable of forming the necessary judgments for self care. There are material issues of fact remaining as to the degree of negligence of James Franks, taking into account that degree of care which children of like age, education, and experience are accustomed to exercising under similar circumstances.
Accordingly, Appellant's assignment of error is well taken andis therefore sustained.
Having found error prejudicial to the Appellant, in the particulars assigned and argued, we hereby reverse the judgment of the trial court with respect to Appellant's first and second assignments of error, and the matter is hereby remanded to the trial court for further proceedings in accordance with this opinion.
 ____________________________ WALTERS, J.
BRYANT and SHAW, JJ., concur.