OPINION
Plaintiff-appellant, Kathleen McCullion, appeals a decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees, Ohio Valley Mall Company, d.b.a., Garland Plaza, Ltd., (OVM) and National Security Consultants, Inc. (NSC).
Appellant was employed by the Mahoning County Department of Human Services (MCDHS). MCDHS leased office space at the Garland Plaza, located in Youngstown, Ohio. OVM owned the plaza and had contracted with NSC to provide security services at the plaza.
On June 29, 1990, appellant was returning from lunch when she was assaulted in front of the MCDHS. Her assailant was a "client" of MCDHS.
On May 2, 1996[1], appellant filed suit against appellees alleging that they had breached their duties in tort and in contract by failing to protect her from the assault and for failing to provide adequate security. On June 17, 1997, appellees jointly filed a motion for summary judgment. They denied the existence of a duty or that they did not breach a duty to the extent one existed. They also argued that the criminal conduct of the assailant broke any causal connection that may have existed between their alleged breach and the injuries sustained by appellant.
On August 12, 1997, the trial court sustained appellees' summary judgment motion and dismissed appellant's claims. The trial court found that appellant had "not produced evidence which could support a jury verdict in her favor." (August 12, 1997 Judgment Entry). Concerning appellant's tort claims, the court found:
 "[w]here the criminal act of a third person intervenes between a Defendant's conduct and Plaintiff's injuries, the Defendants (sic) negligence is the proximate cause of the Plaintiff's injuries if the Defendant could have reasonably foreseen the intervening act of the third person and failed to take reasonable measures which could have prevented the harm." (August 12, 1997 Judgment Entry).
On appellant's contract claims, the court found that appellant had failed to produce any evidence of a "failure to perform the contract in a professional and workmanlike manner." (August 12, 1997 Judgment Entry). This appeal followed.
Appellant raises one assignment of error alleging that the trial court erred in granting appellees' summary judgment motion.
 I. SUMMARY JUDGMENT STANDARD OF REVIEW
An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. We note at the outset that the trial court applied an incorrect standard to its review of appellees' motion for summary judgment. The standard is not simply that that the non-movant produce "evidence which could support a jury verdict in her favor.
Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.Harless v. Willis Day Warehousing Co. (1976), 54 Ohio St.2d 64,66; Civ.R. 56(C).
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 293
The "portions of the record" or evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. Templev. Wean United, Inc. (1977), 50 Ohio St.2d 317.
 "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher, 75 Ohio St. 3d at 293
 II. APPELLANT'S CLAIMS AGAINST NSC
A. Contract
Appellant argues that she presented evidence to establish that NSC owed her a duty based on the contractual relationship between OVM and NSC sufficient to preclude summary judgment. NSC argues that they owed no duty to appellant based on the security contract between themselves and OVM. NSC contends that appellant was at most an incidental beneficiary who had no vested rights in the contract and to whom no duty was owed.
A breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach. Lawrence v. Lorain Cty. Community College (1998),127 Ohio App.3d 546, 548-549. Moreover, only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio. Grant Thornton v. WindsorHouse, Inc. (1991), 57 Ohio St.3d 158, 161. "It is well-established that a contract is binding only upon the parties to the contract and those in privity with them and that an action for breach of contract can only be maintained by the parties to the contract or those deriving rights from the contracting parties." Am. Rock Mechanics, Inc. v. Thermex Energy Corp.
(1992), 80 Ohio App.3d 53, 58. If a party to a contract has no intent to benefit a third party, the third party becomes an incidental beneficiary with no enforceable rights under the contract. Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100,104.
NSC cites Hill v. Sonitrol of Southwestern Ohio, Inc. (1988),36 Ohio St.3d 36, where the Ohio Supreme Court found that a security alarm company owed no duty of protection to an employee of a commercial establishment with which it had contracted to provide security services. In Hill, the Court looked to the language of the contract between the security company and the owner of the premises to determine whether the security company had a duty to protect an employee who was on the property after the establishment had closed for the day. The court explained that the focus should be on the terms of the contract to determine whether or not the injured employee was an intended beneficiary so as to give rise to a duty on the part of the security company to protect the employee. After examining the language of the contract at issue, the court found that no duty existed.
Hill is distinguishable from the instant case. The clear terms of the contract in Hill indicated that the contract was for the protection of property only. Id. at 40. See, also, Eagle v.Mathews-Click-Bauman, Inc. (1995), 104 Ohio App.3d 792 (holding that no duty was created by the security agreement between the security company and building owner when an employee of the tenant raped plaintiff; terms of the contract only applied to the protection of property and only possibly extended to employees, not a third party)
Hill clarified the distinction between intended third party beneficiaries and incidental third party beneficiaries, adopting the Restatement of the Law 2d, Contracts (1981) 439-440, Section 302 which provides:
 "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
 "(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
 "(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
 "(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
Hill also quoted with approval comment e to Section 302 which states in part:
 "Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created. * * *"
In this case, the terms of the contract between NSC and OVMexplicitly provide for the protection of persons. The relevant portion of the contract between OVM and NSC provides as follows:
 "WHEREAS, Company desires to provide for the protection of persons who are at the plaza and the property interest of such persons and all others associated with Plaza; and
 "WHEREAS, Contractor is a recognized private security agency which represents that it is capable of providing for the protection of persons and property at Plaza[.]
"* * *
 "3. Contractor will perform security services for Company at Plaza in accordance with a security personnel assignment schedule that will provide for one guard on duty in a vehicle to be provided by Contractor on 24 hours per day basis. * * * In addition to the duties described in the assignment schedule, Contractor shall perform the following general security duties:
 "(a) Continuous patrol of the parking lot of Garland Plaza and McGuffey Mall by motor vehicle;
"* * *
 "(f) Protect all persons and property, real or personal, associated with Plaza.
 "(g) Prevent all persons from interfering with or otherwise preventing the full lawful enjoyment of Plaza by employees, invitees, tenants, and others." (Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit B-1)
The terms of the contract between NSC and OVM clearly evidences that the protection of persons as well as property was contemplated and that appellant, as an employee of the tenant, was an intended beneficiary of that contract. As such, NSC owed appellant a duty to protect her person arising from this contract, the breach of which presents a factual dispute precluding disposition by way of summary judgment. (See discussion of proximate cause, infra.)
B. Tort
Appellant argues that NSC owed her a duty in tort to protect her from the criminal attack based upon the foreseeability of the attack itself.
To establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom. Menifee v. Ohio Welding Products, Inc.
(1984), 15 Ohio St.3d 75, 77. In Federal Steel Wire Corp. v.Ruhlin Constr. Co. (1989). 45 Ohio St.3d 171, 173, the Ohio Supreme Court held that:
 "Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection.[2]
The court noted that "the law usually does not require the prudent person to expect the criminal activity of others. As a result, the duty to protect against injury caused by third parties, which may be imposed where a special relationship exists, is expressed as an exception to the general rule of no liability." Id. at 174.
In this case, it was the special relationship between appellant and NSC, created by virtue of the NSC-OVM contract, that gave rise to a duty to protect appellant, not the foreseeability of the assault. "Whether a security company owes a duty to a person injured by criminal activity on the premises depends on the terms of the security company's contract with the premises owner."Maier v. Serv-All Maintenance, Inc. (1997), 124 Ohio App.3d 215,221, citing Hill v. Sonitrol of Southwestern Ohio, Inc. (1988),36 Ohio St.3d 36; Eagle v. Mathews-Click-Bauman, Inc. (1995),104 Ohio App.3d 792. Therefore, based on the general rule of no liability, we find that NSC owed no duty to appellant based on the foreseeability of the attack. However, we do find that NSC owed a duty to appellant in tort based upon the special relationship arising from the NSC-OVM contract, the breach of which presents a factual dispute precluding disposition by way of summary judgment. (See discussion of proximate cause, infra.).
C. Proximate Cause
NSC argues that even if it owed appellant a duty, the criminal attack by appellant's assailant acted to sever the causal relationship between its own alleged negligence and/or breach of contract and the damages sustained by appellant.
In determining whether an intervening act breaks the causal connection between negligence and/or breach and injury depends upon whether that intervening act was reasonably foreseeable by the one guilty of the negligence and/or breach. See Mussivand v.David, 45 Ohio St.3d 314, 321. Only a reasonably unforeseeable action may constitute an intervening, superseding cause. See,e.g., Leibreich v. A.J. Refrigeration, Inc. (1993), 67 Ohio St.3d 266. In Rockstroh v. Perkins (Dec. 16, 1996), Mahoning App. No. 95 C.A. 198, unreported, 1996 WL 734015 at *4, this court noted:
 "A rule of general acceptance is that, where the original negligence of the defendant is followed by the independent act of a third person which directly results in injurious consequences to plaintiff, defendant's earlier negligence may be found to be a proximate cause of those injurious consequences, if, according to human experience and in the natural and ordinary course of events, defendant could reasonably have foreseen that the intervening act was likely to happen.
There are currently two generally accepted tests to determine whether a criminal act by a third party was foreseeable. The first test focuses on the existence of prior similar acts.Alexander v. The Pub, Inc. (May 14, 1999), Shelby App. No. 17-98-24, unreported, 1999 WL 378375, citing Hickman v. WarehouseBeer Sys., Inc. (1993), 86 Ohio App.3d 271. Pursuant to this test, the occurrence of prior similar acts suggests that the danger posed by the third party was indeed foreseeable. Heys v.Blevins (June 13, 1997), Montgomery App. No. 16291, unreported, 1997 WL 335564.
Another acceptable test involves an examination of the "totality of the circumstances" to determine whether the danger posed by the third party was foreseeable. Alexander, supra. See, also, Walworth v. BP Oil Co. (1996), 112 Ohio App.3d 340. "This test not only takes into consideration past experiences, but also looks to such factors as the location of the business and the character of the business to determine whether the danger was foreseeable." Heys, 1997 WL 335564 at *6, citing Reitz v. May Co.Dept. Stores (1990), 66 Ohio App.3d 188, 193. When using this particular test, the totality of the circumstances must be "somewhat overwhelming" in order to establish foreseeability.Reitz, 66 Ohio App.3d at 193-194.
In support of their joint motion for summary judgment, appellees presented evidence that no MCDHS employee had ever been assaulted by a "client" and that the assailant had never been involved in a previous incident at that location. These factors, appellees argue, were sufficient grounds to permit the trial court to conclude as a matter of law that the attack was unforeseeable and to grant their motion for summary judgment.
We disagree with this conclusion and hold that the test for foreseeability is not so limited. It is not necessary that NSC should have anticipated the specific type of injury caused by a specific person at a specific time. Instead, the proper analysis is to determine if NSC's actions or inactions were likely to result in an injury to someone. See Pavlides v. Niles Gun Show,Inc. (1994), 93 Ohio App.3d 46, 52, citing Mudrich v. Std. OilCo. (1950), 153 Ohio St. 31. An actor may not necessarily avoid the imposition of a legal duty merely because he/she did not foresee the exact consequences of his/her action or inaction.Mudrid, 153 Ohio St.3d at 39. It is enough that the probability of injury to those similarly situated should have been perceived by a reasonably prudent and careful person. Gedeon v. East OhioGas (1934), 128 Ohio St. 335, 339.
In response to appellees' motion for summary judgment, appellant met her reciprocal burden by providing the trial court with evidence consisting of NSC's own records as well as the activity logs of the Youngstown Police Department. This evidence revealed that prior similar acts as well as a substantial amount of criminal activity of a violent nature in general had occurred at or near the premises where appellant was attacked. (Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit B-3, B-4). The evidence presented by appellant is replete with examples of assaults, numerous threats to MCDHS employees by their "clients," weapons offenses, bomb threats, and robberies. NSC records submitted by appellant reveal approximately thirty-eight crimes involving violence at the Garland Plaza for the time period encompassing August 1988 through April 1990, two months prior to the attack on appellant. (Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit B-3). At least sixteen of these incidents occurred at or near MCDHS.
Under either test to determine foreseeability, appellant presented evidence sufficient to preclude a finding that, as a matter of law, the criminal attack was unforeseeable and that no duty was owed to appellant by NSC. Viewing the evidence in a light most favorable to appellant, a pattern of violent criminal activity is revealed which makes the issue of foreseeability a question of fact for a jury to consider. Simpson v. Big BearStores Co. (Dec. 30, 1993), Franklin App. No. 93AP-852, unreported, 1993 WL 540325, affirmed, (1995), 73 Ohio St.3d 130.
 III. APPELLANT'S CLAIMS AGAINST OVM
A. Contract
Appellant argues that OVM owed her a contractual duty based on OVM's lease agreement with appellant's employer, MCDHS.
As we noted before in our discussion of appellant's contract claim against NSC, only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio. Thornton v. Windsor House, Inc. (1991), 57 Ohio St.3d 158,161. If a party to a contract has no intent to benefit a third party, the third party becomes an incidental beneficiary with no enforceable rights under the contract. Mergenthal v. StarBanc Corp. (1997), 122 Ohio App.3d 100, 104.
Unlike the contract between OVM and NSC, the lease agreement between MCDHS and OVM is silent as to any intention or duty by OVM to provide security for the protection of employees of the tenant. Indeed, the totality of the lease provision as it relates to security provides:
 "C. Landlord shall provide a uniformed security guard for the common areas during the period commencing one-half hour before the Demised Premises are open to the general public and ending one-half hour after the Demised Premises are closed to the general public." (Affidavit of Timothy J. Matune, Exhibit).
Based on the language of the contract, we find that appellant is not an intended third party beneficiary to the OVM-MCDHS lease.
Having found that OVM owed no contractual duty based on the lease agreement between OVM and MCDHS, there remain no genuine issues of fact as to appellant's contract claim against OVM. Therefore, the trial court properly granted summary judgment in favor of OVM in that regard.
B. Tort
Premises or landlord liability is an incident of occupation or control of the premises. Wireman v. Keneco Distributors, Inc.
(1996), 75 Ohio St.3d 103, 108. In determining the issue of control between a landlord and tenant, the logical starting point is the lease. See Beaney v. Carlson (1963), 174 Ohio St. 409,412. In Beaney, the plaintiff was injured near the parking lot outside of the defendant's store. In determining who had control over the premises, the Supreme Court of Ohio compared the commercial parking lot, which was owned by a shopping center, to the common area of an apartment house. Id. at 411. After reviewing the lease, the court concluded that the lessor, not the defendant-lessee, had control over the parking lot and adjacent sidewalk. Id. at 412. See, also, Simpson v. Big Bear Stores Co.
(1995), 73 Ohio St.3d 130, 134 (in shopping center setting, each business owner is responsible for area of its leasehold, and the entire common area is the responsibility of the entity in control of the common area)
The lease between OVM and MCDHS provides that the tenant and the tenant's officers, employees, customers, and invitees have the non-exclusive right in common with all others granted such rights to use the common areas. However, the lease also provides that the landlord is responsible for operating, managing, and maintaining the common areas. "Common areas" is defined to include the parking lot and sidewalks.
Based on this arrangement, we find that OVM was in control of the area in which appellant was injured. Having found that OVM had control, the next determination is what duty OVM owed to appellant. That determination depends on appellant's status on the premises.
An invitee is one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest. Provencher v. Ohio Dept. of Transp. (1990), 49 Ohio St.3d 265,266. The OVM-MCDHS lease makes clear that appellant, as an employee of MCDHS, had OVM's permission to use the common areas. Therefore, for purposes of determining OVM's duty under premises liability, appellant was an invitee.
The owner or occupier of land has a duty to warn or protect its invitees from criminal acts of third parties when the owner or occupier knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the owner or occupier. See Simpson v. Big Bear StoresCo. (1995), 73 Ohio St.3d 130, syllabus.
Arguably, OVM knew or should have known that there was a substantial risk of harm to its invitees. (See discussion of proximate cause, supra.). However, that fact alone only establishes the duty element of appellant's prima facie case. OVM could still avoid liability by demonstrating that they did not breach that duty.
When an owner or occupier knows or should know that there is a substantial risk of harm to its invitees, we find that the owner or occupier meets this duty by taking some reasonable precautions to provide reasonable security. See Carmichael v. Colonial SquareApts. (1987), 38 Ohio App.3d 131, 132. In this case, OVM hired a professional security company, NSC, to protect its invitees. We find that by doing so OVM took sufficient steps to protect its invitees and therefore did not breach its duty.
Having found that OVM did not breach its duty to warn or protect its invitees from the criminal acts of third parties, there remain no genuine issues of fact as to appellant's tort claim against OVM.
As an aside, we note that appellant has also made a claim for punitive damages. The parties have thoroughly briefed the issue. However, there is no evidence in the record to indicate that the trial court ever reached the matter or made a determination. Therefore, it would be premature for this court to address the issue and serve as an impermissible advisory opinion. N. Cantonv. Hutchinson (1996), 75 Ohio St.3d 112, 114.
In conclusion, the judgment of the trial court is reversed to the extent that it granted summary judgment in favor of NSC on appellant's tort and contract claims and affirmed to the extent that it granted summary judgment in favor of OVM on appellant's tort and contract claims. Cause remanded for further proceedings consistent with this court's opinion and according to law.
VUKOVICH, J., concurs.
WAITE, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.
APPROVED:
 ___________________________________ GENE DONOFRIO Judge
[1] Appellant originally filed suit in 1992. She voluntarily dismissed the suit on May 5, 1995, while appellees had a motion for summary judgment pending.
[2] The court explained that "[t]he special relationships which may give rise to a duty to control the conduct of another person may be between the defendant and either the person whose conduct needs to be controlled or the injured plaintiff, the foreseeable victim." Id. at fn. 1.